JULIEN SWANSON (SBN 193957)
AUSTIN LAW GROUP
799 Castro Street
San Francisco, California 94114
Tel: (415) 282.4511
Fax: (415) 282.4536
swanson@austinlawgroup.com

Attorney for Plaintiff
MALCOLM SHERWOOD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM SHERWOOD<br><br>Plaintiff,<br><br>v.<br><br><br>INTERSEC INTERACTIVE INC., a New York Corporation; DANIEL INTRAUB; BRETT SCOTT; DOES 1-100<br><br><br>Defendants. | Case No.  3:17-cv-5516<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No.  3:17-cv-5516
Page 1

# INTRODUCTION

1. Plaintiff Malcolm Sherwood ("SHERWOOD" or "Plaintiff") brings this action against Defendants Intersec Interactive Inc., ("INTERSEC"); Brett Scott ("SCOTT"), Daniel Intraub ("INTRAUB") and DOES 1-100 (collectively, "Defendants"), and alleges (i) multiple violations of the California Labor Code, including failure to timely pay wages, overtime and meal and rest premiums, the failure to provide itemized paystubs, and the intentional, systemic and willful misclassification of him as an independent contractor in violation of longstanding public policy of California; (ii) unfair business practices; and (iii) fraudulent inducement of employment, insofar as Defendants lured Plaintiff from a steady job that he enjoyed and that had an excellent benefits package, with false promises made by INTERSEC's agents of a management opportunity with INTERSEC, with creative control over projects and regular salary increases and bonuses. In reliance on those promises, SHERWOOD left his current employment and accepted the job offer with INTERSEC, and was thereafter lulled into continuing to work for INTERSEC on the continued false promises by the agents of the company, that he would be given the management opportunity, creative control, and financial incentives. However, Mr. SHERWOOD was never provided a management position, a raise or bonus, or the creative control that he was promised and on which he relied when he acted to sever ties with his former employment and to transfer to INTERSEC.

2. SHERWOOD learned in late 2014 that INTRAUB had taken control of the Company, and that SHERWOOD, instead of attaining management or creative authority, would be providing editorial services to INTRAUB and at INTRAUB's direction. In early 2015, SHERWOOD was informed by the Financial Manager of the company, that it was too small and unstable of a company to give any of its workers raises or stability, and that it had not given a raise since before SHERWOOD's hiring, informing SHERWOOD that INTERSEC's promises were not only false, but that it never had any intention of

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 2

keeping them. As a result, Mr. Sherwood suffered loss of security and income from his former employment, emotional distress, loss of professional development and relationships.

3. INTERSEC relocated out of state in approximately April 2016, without fulfilling its obligations SHERWOOD. SHERWOOD has suffered financial and emotional distress, and to this day, is under-employed and has been unable to replace the income, and other benefits of employment that his previous employer offered and that he left in reliance in INTERSEC's false promises.

## PARTIES

4. Plaintiff SHERWOOD is, and was at all times relevant herein, is an individual over the age of 18, and a resident of the State of California and was employed by Defendants in the City of Oakland, California.

5. Defendant INTERSEC is a corporation, incorporated in 2003 in the state of New York that at all relevant times herein, owned and operated a pornography business in the City of Oakland California.

6. Defendant INTRAUB, a natural person who was at all times herein a managing agent of, including acting as general manager of INTERSEC;

7. Defendant SCOTT, a natural person who was at all times herein a managing agent of, including acting as president of INTERSEC;

8. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100 inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of these fictitiously named defendants is responsible in some manner for the occurrences alleged herein and thereby proximately caused Plaintiff's injuries alleged herein.

9. Plaintiff is informed and believes, and on that basis alleges, that, at all relevant times, each of the defendants was the agent or employee of each of the remaining defendants, and, in doing the things

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 3

herein alleged was acting within the course and scope of such employment, and that Defendants authorized ratified, and approved, expressly or implicitly, all of the conduct alleged herein.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the parties and claims involved in this action pursuant to United States Code, title 28, section 1332 because Plaintiff on the one hand, and Defendants on the other, are citizens of different states and the amount in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the federal Northern District of California.

## ALLEGATIONS OF FACT

12. On or about July 5, 2012, an offer of employment was made to SHERWOOD by INTERSEC through Matt Williams.

13. On August 16, 2012, INTAUB provided a written offer of employment to SHERWOOD in writing as follows:

> *As you requested I'd like to describe what exactly you'll be doing for us and what the terms of our agreement are. First we agree to $63,000 annually to be paid biweekly. You'll submit an invoice for the two week period and we'll pay you in the agreed upon manner (check, direct deposit, ACH, etc). We also agree to 14 days paid vacation. Notice of vacation must be given at least two weeks in advance and all work must be prepared to cover the time you will be gone.*
>
> *We will provide a computer for use in our office. You are not permitted to remove any content from our premises unless specifically approved by me. You will also not discuss any methods, technology, content, storylines, or conversations had at Intersec with anyone. All work produced for Intersec will remain sole property of Intersec.*
>
> *Your responsibilities at Intersec will be to make sure all videos, pictures (35mm and Video grabs), and trailers (30 second, 1 minute, 3 minute, and 6 minute) are edited and approved before their due dates. To build and maintain a queue of updates. To edit any content that is not edited by the rest of the post production staff.*
>
> *You will report to me about any issues you have with personnel, content, equipment, etc. Any acquisitions you require must be approved by me as well as Ascenza. If you have any questions or if you need clarification please feel free to ask.*

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 4

14. On September 14, 2012, Ascenza Montalbanco, Financial Manager of INTERSEC, provided the following to SHERWOOD, with a copy to INTRAUB:

> *To reiterate, the yearly salary is $65,000 to be paid biweekly[ ]. You will invoice every two weeks for $2500, sending on Wed to be paid by Friday. Direct Deposit takes two days, so you are aware. Your first invoice will be on Wed September 26. Let me know when you decide if we will be paying to you directly or to your LLC.*

15. From approximately September 2012 through May of 2016, SHERWOOD performed labor and services for INTERSEC in exchange for a fixed salary that was paid bi-weekly, with 14 paid days of vacation per year, and he received a bi-weekly fixed reimbursement for health insurance costs.

16. While Defendants classified SHERWOOD and each of their other workers as independent contractors, each of these workers was an employee under California and federal law, and as such, was entitled to the benefits of an employee under California and federal law.

17. In a December 22, 2014 mandatory meeting of INTERSEC employees, INTERSEC advised SHERWOOD and its other workers that they must decide whether they would continue to be classified as an independent contractor, or begin being classified as an employee going forward, describing factors to consider such as the tax implications of each classification.

18. SHERWOOD is informed and believes that this meeting was in response to INTERSEC receiving notice from two former employees that they intended to file a PAGA action regarding INTERSEC's violations of the California Labor Code and the misclassification of all the employees of the company as independent contractors.

19. On March 11, 2015, those two former employees of INTERSEC filed a complaint in the Northern District Court of California against INTERSEC, wherein they alleged INTERSEC engaged in a systemic and intentional misclassification of its employees as independent contractors.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 5

20. By knowingly and intentionally misclassifying SHERWOOD as in independent contractor, INTERSEC illegally required SHERWOOD to assume a burden that the law imposes directly on it, that is, withholding payroll taxes and reporting such withholdings to the taxing authorities.

21. The main test for whether a worker is an independent contractor or an employee is whether the employer has the right to control the manner and means of the worker's performance. *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349–351.

22. A number of different factors contribute to the extent of control that an employer exercises over its workers: (1) the right to discharge at will, without cause; (2) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (3) the length of time for which the services are to be performed; (4) the method of payment, whether by the time or by the job; (5) whether the one performing services is engaged in a distinct occupation or business; and (6) whether or not the work is part of the regular business of the principal. *Id.*

23. Each of the foregoing factors resolved in favor of a finding that SHERWOOD was a misclassified employee.

- INTERSEC maintained control over the work he performed;
- His employment could be terminated at will and without cause;
- He used INTERSEC's tools, including computers, office space, cameras, software, props, etc.
- He was expected to be at work at a specific time and specific place, five days a week.
- He was paid a fixed salary on a bi-weekly basis, provided 14 days paid vacation, and reimbursed a fixed sum for health care expenses;
- He was not engaged in his own distinct occupation or business, instead, he performed a variety of tasks, all of which were integral to INTERSEC's regular business.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 6

24. In California, regarding whether a worker should be considered an employee versus an independent contractor, the law must be applied "with deference to the purposes of the protective legislation."

25. Since Defendants misclassified Plaintiffs and other employees as independent contractors, SHERWOOD was directed to submit an invoice to accounting for each two-week period, for the agreed upon, fixed amount. Accordingly, he did not clock in or out.

26. Plaintiff SHERWOOD regularly worked in excess of 8 hours per day, and forty hours per week, and was routinely denied meal and rest breaks multiple times per week in order to complete the work he was performing for INTERSEC and at its direction.

27. He was not timely paid for mandatory overtime wages, nor was he timely compensated for meal and rest premiums.

28. INTERSEC failed to provide SHERWOOD with accurate itemized wage statements for each pay period that he worked, from 2012 through 2016.

29. INTERSEC has failed to provide a copy of SHERWOOD's personnel file and his pay statements, despite his written request for these documents, made on September 18, 2017.

30. Prior to working for INTERSEC, SHERWOOD was employed with a reputable adult entertainment company that provided steady employment, employment benefits, and a good working environment.

31. SHERWOOD was lured to sever the ties he had built with his former employer, and to shift his loyalty to and work for INTERSEC in late 2012 on false promises made by INTERSEC's employees and agents, including INTRAUB and Matt Williams, that if SHERWOOD left his current employment and began working for INTERSEC, he would be given a management position with increased autonomy, responsibility and creative control over productions, as well as regular salary increases and bonuses.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 7

32. It was promised to SHERWOOD that he would become part of the management team, and would enjoy the strong community that made INTERSEC a desirable place to work, and that he would be rewarded with professional development and financial incentives that would result in his long term employment.

33. INTERSEC's agents made false promises that INTERSEC was financially stable and that it was committed to stay in the Bay Area and California.

34. SHERWOOD reasonably relied on and believed the promises made by INTERSEC's agents, and based on that reliance, left his regular employment which he did not have a management position or creative control, despite its good employment benefits and good work environment.

35. For a period of two years, INTERSEC lulled SHERWOOD to remain employed with the company through ongoing promises of professional development, creative control and increased salary, and made excuses for the delay in providing those things while maintaining the promises would be fulfilled.

36. By December 2014, and despite INTERSEC's ongoing promises, SHERWOOD was re-assigned to performing editing services for INTRAUB and at his direction, without management authority or any bonus or increases in his salary.

37. It was at this point, in December of 2014, that SHERWOOD discovered that the promises made to him by INTERSEC in order to lure him to work for, and to lull him to remain employed by INTERSEC were false.

38. By July 15, 2015, SHERWOOD was informed by INTERSEC's financial manager, that the company was too small to provide raises or bonuses to any of its workers, and it had not done so for any of its workers from before SHERWOOD was hired.

39. SHERWOOD learned that Williams and INTAUB had not accurately portrayed the company's financial situation when luring SHERWOOD to accept the employment opportunity, specifically, (i) that

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 8

the Company was too small to give any raises to any workers or employees, (ii) that the Company was wrought with infighting, its workers felt underappreciated and taken advantage of while not being provided the benefits they were promised or entitled to; and (iii) that the company was not financially sound and was not committed to staying in California.

40. SHERWOOD discovered that the company not only made false promises to him in order to lure him into employment, but made them without any intention of performing them.

41. As a result, SHERWOOD was not provided the benefits that were falsely promised to him in order to lure him to leave his former stable employment.

42. As a further result, he has suffered financial damage including job and salary loss and unemployment, emotional damage and distress, professional and reputational detriment, interference with professional relationships and the loss of employment benefits.

### CLAIM ONE

**Unpaid Wages - Cal. Labor Code § 204 and California Code § 203**
**(Against all Defendants)**

43. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated in full herein.

44. Defendants' conduct as alleged herein constitutes a violation of California Labor Code § 204, which requires employers to pay to its employees all wages due on a semi-monthly basis.  As well, all wages earned for labor in excess of the normal work period are to be paid no later than the payday for the next regular payroll period.

45. Defendants knowingly and intentionally refused to pay Plaintiff for his time worked in addition to eight per day and forty per week.

46. As a direct result of Defendants' unlawful employment practices, as alleged herein, Plaintiff has been injured and is entitled to unpaid wages and interest in the amount to be proven at time of trial.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No.  3:17-cv-5516
Page 9

## CLAIM TWO

### Overtime - Cal. Labor Code § 510 IWC Wage Order No. 5
### (Against all Defendants)

47. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

48. Defendants' conduct, as alleged herein, constitutes a violation of Cal. Lab. Code § 510 and IWC Wage Order No. 5, which require employers to pay overtime compensation to workers who perform work in excess of eight hours on one day or forty hours in one week.

49. Defendants knowingly and intentionally refused to pay Plaintiff overtime compensation for hours worked over eight per day and forty per week.

50. As a direct result of Defendants' unlawful employment practices, as alleged herein, Plaintiff has been injured and is entitled to unpaid overtime wages and interest.

## CLAIM THREE

### Meal and Rest Period Violations - Cal. Labor Code § 226.7, 512, Order No. 16-2001 §§10, 11
### (Against all Defendants)

51. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

52. California law requires employers authorize and permit an uninterrupted 30 minute meal period to employees that work more than five hours in one day, a second uninterrupted 30-minute break to employees that work more than ten hours in one day, and an uninterrupted 10-minute break for every four hours of work. See Cal. Labor Code § 226.7, 512, Order No. 16-2001 §§10, 11.

53. Employers have the burden to keep records or otherwise prove that the required meal and rest periods were provided to employees, and in the absence of such records there will be a presumption that such meal and rest periods were not provided. An employee is entitled to one hour of pay for each day he is not provided with mandatory meal and rest periods. See Cal. Lab. Code § 226.7.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 10

# CLAIM FOUR

### Failure to Provide Timely Records for Inspection - Cal. Labor Code §§ 226, 1198.5
### (Against all Defendants)

54. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

55. Defendants are required under the law to provide (i) personnel file and (ii) payroll records to Plaintiff for copying and inspection within 30 and 21 days respectively, following a related and proper request for the documents by the employee or its representative.

56. Defendant has indicated its unwillingness to provide the requested records to Plaintiff despite a written request for a copy of the documents, made on September 18, 2017.

57. Plaintiff has suffered insofar as he has been denied the ability to review the records to which he is entitled to, and as such, is entitled to the penalties associated with the above described violations.

# CLAIM FIVE

### Failure to Provide Itemized Paystubs - Cal. Labor Code § 226(a)
### (Against all Defendants)

58. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

59. Defendants' conduct, as alleged herein, constitutes a violation of Cal. Lab. Code § 226(a), which requires employers to provide its employees with accurate itemized wage statements for each pay period.

60. Defendants knowingly and intentionally failed to provide Plaintiff with accurate, itemized wage statements showing the total hours worked during the pay period, the net and gross payments as well as any deductions, the applicable hourly rate or rates in effect during the pay period, meal and rest premiums, and Defendant's legal name and address.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 11

61. As a direct result of Defendants' unlawful employment practices, as alleged herein, Plaintiff has been injured because he could not promptly and easily determine from his wage statements the total hours worked during the pay period, the applicable hourly rate or rates in effect during the pay period, and Defendant's legal name and address, and he is therefore entitled to penalties and attorney's fees under Lab.Code § 226(e).

## CLAIM SIX

### Waiting Time Penalties - Cal. Labor Code § 201(a)
### (Against all Defendants)

62. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

63. Defendants' conduct, as alleged herein, constitutes a violation of Lab. Code § 201(a), which requires an employer to pay an employee all earned and unpaid wages immediately upon discharge.

64. Defendants willfully failed to pay Plaintiff all wages owed upon their termination.

65. As a direct result of Defendants' unlawful employment practices, as alleged herein, Plaintiff is entitled to penalties under Lab. Code § 203(a).

## CLAIM SEVEN

### Unfair Business Practices – Bus. And Prof. Code § 17200 et seq.
### (Against INTERSEC)

66. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

67. Defendants' conduct, as alleged herein, constitutes unfair competition in violation of Bus. & Prof. Code § 17200 et seq., which prohibits unfair business acts and/or practices.

68. As a direct result of Defendants' unfair and unlawful business practices, Plaintiff has been injured as alleged herein and are entitled to unpaid wages, interest, and attorney's fees.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No.  3:17-cv-5516
Page 12

## CLAIM EIGHT

### Promissory Fraud
### (Against INTERSEC)

69. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

70. INTERSEC made promises to SHERWOOD that he would be given professional development opportunities and creative control, as well as regular bonuses and raises that would lead to long term stable and financially and professionally lucrative employment, if he left his current employment and came to work for INTERSEC;

71. INTERSEC intended that SHERWOOD would rely on these promises, but it did not intend to perform these promises when they were made. Instead, INTERSEC was too small to fulfill the financial promises it made, and it was too small and disorganized to guarantee the management and creative control it promised, as well as the stability and long-term job satisfaction it promised.

72. SHERWOOD reasonably relied on these promises when he left his former employer and began working with INTERSEC;

73. INTERSEC did not perform the promised acts, and instead assigned SHERWOOD to a non-managerial tasks, without providing any raises or bonuses, and in 2016, moved its operating location out of state causing his employment opportunity to terminate.

74. Sherwood was harmed, insofar as he was denied professional development, denied employment benefits, denied financial incentives, denied a promised management opportunity, and experienced interference with professional relationships. He suffered salary loss and loss of employment benefits.

75. SHERWOOD's reliance on the promises made by the agents of INTERSEC was a substantial factor in causing his harm, and he would not have left his former employer but for those false promises.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 13

76. INTERSEC routinely and systemically makes false statements to and misclassifies its employees which result in securing increased profits, leaving its workers, including SHERWOOD, to suffer the burdens and financial detriments that result from its unfair business practices.

77. SHERWOOD is entitled to damages as a result of the resulting harm suffered, to be proven at trial, including attorney's fees and punitive damages.

## CLAIM NINE

### Negligent Misrepresentation
### (Against INTERSEC)

78. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

79. INTERSEC represented to SHERWOOD that he would be given managerial and creative authority over projects, with increases in salary and bonuses, as well as long-term job stability, but these representations were not true.

80. INTERSEC's agents may have honestly believed that the representation(s) were true, however, had no reasonable grounds for believing the representation(s) were true when they were made.

81. INTERSEC intended that SHERWOOD rely on the representation(s), and SHERWOOD did indeed rely thereon when he left his former employment and accepted the job offer with INTERSEC.

82. SHERWOOD's reliance on the representations was reasonable, as a result of that reliance, he was harmed insofar as he was denied professional development, denied employment benefits, denied financial incentives, denied a promised management opportunity, and experienced interference with professional relationships.  He suffered salary loss and loss of employment benefits.

83. SHERWOOD's reliance on INTERSEC's representation(s) made through its agents, was a substantial factor in causing his harm.

84. As a result, SHERWOOD is entitled to damages as a result of the resulting harm suffered, to be proven at trial, including attorney's fees and punitive damages.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No.  3:17-cv-5516
Page 14

# CLAIM TEN

**Fraudulent Inducement to Change Employment - Cal. Labor Code § 970**
**(Against All Defendants)**

85. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated here in full.

86. SHERWOOD was persuaded by INTERSEC to change from one employer to another, INTERSEC, by means of false representation regarding (1) The kind, character, or existence of the work; or (2) The length of time such work will last, or the compensation therefor.

87. INTERSEC falsely promised his a management opportunity, with creative control and regular raises and bonuses.

88. SHERWOOD was not given a management position, and was instead assigned to perform editorial services under the direction of INTRAUB, and received no raises or bonuses.  As well, the company left California, leaving SHERWOOD unemployed.

89. As a result, SHERWOOD is entitled to damages and penalties for the violation described herein.

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No.  3:17-cv-5516
Page 15

**WHEREFORE PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:**

1. For general damages according to proof or, in the alternative, in the amount of $450.000.00.

2. For special damages in an amount according to proof at time of trial;

3. For costs of suit incurred herein, including attorney's fees under Cal. Lab. Code § 218.5; and Bus. And Prof. Code § 17200 and other relevant statutes;

4. For exemplary damages, as the court or jury may deem adequate;

4. For such other and further relief as the court may deem proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED: September 22, 2017         Respectfully submitted,

                                  AUSTIN LAW GROUP


                                  By:  */s/ Julien Swanson*
                                       Julien Swanson, Esq.
                                       Attorney for Plaintiff SHERWOOD

Plaintiff's Complaint for Damages
*Sherwood v Intersec et al* - Case No. 3:17-cv-5516
Page 16